# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAMONA L. MATTHEWS, | ) | Case No. EDCV 11-01075-JEM |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## PROCEEDINGS

On July 11, 2011, Ramona L. Matthews ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Social Security Income benefits. The Commissioner filed an Answer on October 17, 2011. On January 17, 2012, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 42 year old female who applied for Supplemental Social Security Income benefits on December 5, 2007, alleging disability beginning August 1, 2006.  (AR 31.)  Plaintiff has not engaged in substantial gainful activity since December 5, 2007.  (AR 33.)

Plaintiff's claim was denied initially on January 15, 2008, and on reconsideration on May 16, 2008.  (AR 31.)  Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Jesse J. Pease on July 31, 2009, in Palm Springs, California.  (AR 43-60.)  Claimant appeared and testified at the hearing, and was represented by counsel.  (AR 31.)  Vocational expert ("VE") Corinne J. Porter also appeared and testified at the hearing.  (AR 31.)  The ALJ issued an unfavorable decision on November 13,  2009.  (AR 31-39.)  The Appeals Council denied review on January 10, 2011, and May 12, 2011.  (AR 1-12.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1.  Whether the ALJ's residual functional capacity finding is based on a legally proper rejection of the opinion of treating psychiatrist MacMorran and is otherwise supported by substantial evidence.

2.  Whether the ALJ's finding that Plaintiff's subjective complaints are not credible is based on a proper application of the relevant legal standards and is otherwise supported by substantial evidence.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

### THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the

regulations. <u>Parra</u>, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. <u>Bowen v. Yuckert</u>, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. <u>Pinto v. Massanari</u>, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. <u>Parra</u>, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. <u>Id.</u>

### THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since December 5, 2007, the application date. (AR 33.)

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

1   At step two, the ALJ determined that Plaintiff has the medically determinable severe

2   impairment of schizoaffective disorder.  (AR 33. )

3   At step three, the ALJ determined that Plaintiff does not have an impairment or

4   combination of impairments that meets or medically equals one of the listed impairments.  (AR

5   33-34.)

6   The ALJ then found that Plaintiff had the RFC to perform a full range of work at all

7   exertional levels, but with the following non-exertional limitations:

8   Plaintiff is restricted to simple repetitive tasks in a non-public environment

9   with only occasional contact with others and a habituated-type work setting.

10   (AR 35.)  In determining this RFC, the ALJ also made an adverse credibility determination.

11   (AR 36.)

12   At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 38.)  At step

13   five, the ALJ also found that there were unskilled jobs that exist in significant numbers in the

14   national economy that Plaintiff can perform, including cleaner and hand packager.  (AR 38-39.)

15   The VE, however, also testified that if Plaintiff was off-task 20 percent of the time, there would

16   be no work she could perform.  (AR 58.)

17   Consequently, the ALJ concluded that Plaintiff is not disabled within the meaning of the

18   Social Security Act.  (AR 39.)

19   **DISCUSSION**

20   The ALJ decision must be reversed.  In this case, the ALJ improperly discounted the

21   opinion of Dr. MacMorran, Plaintiff's treating psychiatrist, and improperly discounted Plaintiff's

22   credibility.  The ALJ's RFC is not supported by substantial evidence.

23   **I.   THE ALJ'S RFC IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

24   An RFC is not a medical determination but an administrative finding or legal decision

25   reserved to the Commissioner based on consideration of all the relevant evidence, including

26   medical evidence, lay witnesses and subjective symptoms.  See SSR 96-5p; 20 C.F.R.

27   § 1527(e).  In determining a claimant's RFC, an ALJ must consider all the relevant evidence in

28

the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to the medical condition.  <u>Robbins</u>, 466 F.3d at 883.

The ALJ determined that Plaintiff has the severe impairment of schizoaffective disorder. (AR 33.)  She hears voices that cause her to become confused and frustrated.  (AR 35.)  The voices tell her that she is fat and ugly and should not live anymore.  (AR 35.)  Plaintiff has attempted suicide three times, most recently in 2005.  (AR 35, 282.)  She takes Abilify for the voices.  (AR 35.)  Plaintiff has trouble dealing with people, does not like being around people, and does not trust anyone.  (AR 35, 157.)  She has used illegal drugs in the past, with a relapse in 2007.  (AR 36.)  Plaintiff completed the ninth grade, can read and write only a little, and attended special education classes in school.  (AR 35, 57.)  She also has a long history of homelessness.  (AR 267, 269.)

Plaintiff has been receiving outpatient treatment at Riverside County Department of Mental Health since 2005 and began seeing treating psychiatrist Dr. William MacMorran in 2007.  (AR 281, 326.)  He reported that Plaintiff hears voices and described her as depressed and paranoid.  (AR 269-73.)  Dr. MacMorran also reported drug abuse.  (AR 273.)  He diagnosed schizoaffective disorder, depressive type, with a poor prognosis and prescribed Abilify and Trazadone.  (AR 273, 280.)  Dr. MacMorran subsequently reported that Plaintiff seemed concerned with people talking about her and was upset because he refused to threaten others for her.  (AR 275.)  There was some progress in reducing the voices due to the medication, but Plaintiff remained paranoid with continued negative symptoms of alogia, asociality, anhedodia, and amotivation, with marked difficulty in social relationships.  (AR 274, 367.)  In 2008, Dr. MacMorran assessed Plaintiff with marked limitations in activities of daily living, social functioning, and maintaining concentration, persistence and pace.  (AR 330.)  He found that she would be unable to meet competitive standards in 24 of 26 aptitudes needed to do unskilled work.  (AR 328-329.)  He believed she likely would miss work 4 days a month.  (AR 331.)  He also stated that she was not a malingerer.  (AR 331.)  Dr. MacMorran completed numerous assessments, including a Mental Disorder Questionnaire, a Mental Capacities Evaluation, and a Medical Source Statement.  There also are several treatment notes.

1    The ALJ, however, concluded that Plaintiff was capable of performing work, despite her

2    mental impairments.  The ALJ rejected Dr. MacMorran's RFC, relying instead on the

3    assessments of agency psychiatrists Dr. Barbara Smith and Dr. Robert Paxton, who reviewed

4    the medical evidence but did not examine Plaintiff.  (AR 34, 37, 253-268, 298-99).  Citing

5    evidence that the voices Plaintiff hears have diminished and her mood has improved (AR 262),

6    Dr. Smith opined that Plaintiff is capable of performing unskilled, non-detailed tasks requiring

7    one and two part instructions in a non-public setting.  (AR 263).  Dr. Paxton also reviewed the

8    medical evidence and affirmed Dr. Smith's assessment.  (AR 298.)

9        Plaintiff contends that the ALJ improperly discounted Dr. MacMorran's opinion and RFC.

10   The Court agrees.

11   **A.    The ALJ Improperly Discounted The Opinion
         Of Plaintiff's Treating Physician**

12

13          1.    Relevant Federal Law

14       In evaluating medical opinions, the case law and regulations distinguish among the

15   opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2)

16   those who examine but do not treat the claimant (examining physicians); and (3) those who

17   neither examine nor treat the claimant (non-examining, or reviewing, physicians).  See 20

18   C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In

19   general, an ALJ must accord special weight to a treating physician's opinion because a treating

20   physician "is employed to cure and has a greater opportunity to know and observe the patient

21   as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If

22   a treating source's opinion on the issues of the nature and severity of a claimant's impairments

23   is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is

24   not inconsistent with other substantial evidence in the case record, the ALJ must give it

25   "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Conversely, an ALJ is not

26   required to give controlling weight to a treating physician's opinion unless it is well supported

27   and not inconsistent with other substantial evidence of record.  20 C.F.R. § 404.1527(d)(2);

28   SSR 96-2p.

1    Where a treating doctor's opinion is not contradicted by another doctor, it may be

2    rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the

3    treating physician's opinion is contradicted by another physician, such as an examining

4    physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate

5    reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also

6    Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Where a treating

7    physician's opinion is contradicted by an examining professional's opinion, the Commissioner

8    may resolve the conflict by relying on the examining physician's opinion if the examining

9    physician's opinion is supported by different, independent clinical findings.  See Andrews v.

10   Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.

11        Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must

12   provide clear and convincing reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.

13   2005).  If an examining physician's opinion is contradicted by another physician's opinion, an

14   ALJ must provide specific and legitimate reasons to reject it.  Id.  However, "[t]he opinion of a

15   non-examining physician cannot by itself constitute substantial evidence that justifies the

16   rejection of the opinion of either an examining physician or a treating physician"; such an

17   opinion may serve as substantial evidence only when it is consistent with and supported by

18   other independent evidence in the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

19        2.    Analysis

20        The ALJ offered multiple reasons for rejecting Dr. MacMorran's RFC.  First, the ALJ

21   found that Dr. MacMorran's RFC is "unsupported by the treatment records as well as other

22   substantial evidence of record, namely, the assessments of Drs. Smith and Paxton."  (AR 37.)

23   The Commissioner asserts that Dr. MacMorran's opinion was directly contradicted by two State

24   agency psychiatrists, Dr. Smith and Dr. Paxton, who opined functional restrictions in line with

25   the ALJ's findings.  (AR 37.)  The opinion of a non-examining physician, however, cannot serve

26   as substantial evidence unless those opinions are "consistent with independent clinical findings

27   or other evidence in the record."  Thomas, 278 F.3d at 957; Lester, 81 F.3d at 830-31; Morgan,

28   169 F.3d at 600.  Here, there are no other physician opinions or lab results contradicting

8

1  Dr. MacMorran that would constitute independent evidence, but the ALJ relied on Dr.

2  MacMorran's treatment notes, as "other evidence in the record," which the ALJ contends do not

3  support his RFC.  Specifically, the ALJ cites treatment records evidencing Plaintiff's positive

4  response to Abilify, which reduced her voices, and Plaintiff's comment that she could work if the

5  voices went away.  (AR 35, 37.)  Lester, 81 F.3d at 831 (ALJ may not rely on non-reviewing

6  physician opinion alone, but can do so where consistent with lab results, contrary physician

7  opinions, and testimony from claimant that conflicted with treating physician's opinion).

8  Impairments that can be controlled with medication are not disabling.  Tommasetti v. Astrue,

9  533 F.3d 1035, 1040 (9th Cir. 2008); Warre v. Comm'r of Soc. Sec. Adm., 439 F.3d 1001, 1006

10  (9th Cir. 2006).

11          The ALJ, however, mischaracterizes Dr. MacMorran's opinions and treatment notes, and

12  the record, by focusing on Plaintiff's voices to the exclusion of other aspects of her mental

13  impairment.  Schizoaffective disorder is more than just "voices."  In her Disability Report,

14  Plaintiff described her impairment as "mental problems, nervous breakdown, hear voices and

15  depression."  (AR 136, 74.)  Dr. MacMorran diagnosed her with schizophrenic disorder

16  depressive type (AR 280) and repeatedly noted her depression and paranoia (AR 269, 220,

17  274), with difficulty following instructions and needing assistance with appointments.  (AR 270.)

18  Dr. MacMorran noted "some progress" in reducing Plaintiff's voices with Abilify, but observed

19  that she remains "notably paranoid around others and isolative" with continued symptoms that

20  meet the criteria for schizoaffective disorder.  (AR 274.)  In a treatment note dated 11/24/2008,

21  Dr. MacMorran found Claimant "has continued negative sx [symptoms] of alogia, asociality,

22  anhedodia and amotivation and marked difficulty in social relationships."  (AR 313, 367.)  In a

23  September 30, 2008, Medical Source statement, Dr. MacMorran noted "fair response to

24  medicines for positive symptoms (voices) poor response to negative symptoms," and despite

25  good response to medications, "functional improvements have not followed treatment" (AR

26  326), despite outpatient psychiatric visits since 2005.  Dr. MacMorran's RFC plainly was based

27  on more than Plaintiff's voices and was not inconsistent with, but fully supported by, his

28  treatment notes.

1    Neither the ALJ opinion nor the State Agency reviewing physicians specifically address
2  Plaintiff's paranoia and depression, how they affect her ability to perform work, or how often she
3  would be off task or miss work.  Plaintiff has no prior relevant work and, although Dr. Smith
4  opined that Plaintiff could work in a non-public setting, neither she nor the ALJ addressed
5  Plaintiff's asociality, paranoia, isolating behavior, and marked difficulty in social relationships
6  with co-workers and supervisors.  There is nothing in the record that suggests Plaintiff can
7  work, given the totality of her impairment and all of its symptoms.

8    There also is a major contradiction in the ALJ opinion.  The ALJ discredits Plaintiff's
9  credibility (AR 36) and discounts Dr. MacMorran's RFC because it relies primarily on Plaintiff's
10  subjective statements, which are not entirely credible.  (AR 37.)  Nonetheless, the ALJ then
11  relies on Plaintiff's statements that the only reason she could not work was due to hearing
12  voices (AR 35, 37, 49), Abilify markedly reduced the voices she was hearing, and she feels her
13  mood improved.  (AR 274, 277, 313, 367.)  These were Plaintiff's own reported symptoms,
14  which were not accepted by Dr. MacMorran, who repeatedly gave the more guarded evaluation
15  of only "some progress."  Indeed, Plaintiff reported hearing voices the day before the hearing,
16  an important fact never mentioned in the ALJ opinion.  (AR 47.)  The ALJ overstates the
17  evidence regarding Plaintiff's voices and treats the statements of a mentally impaired person,
18  elsewhere found not credible, as more probative than the opinion of a trained psychiatrist.
19  Plaintiff's comments do not provide a legitimate basis for preferring the opinions of the non-
20  examining State agency reviewers over the opinion of Dr. MacMorran.

21    The ALJ's next reason for discounting Dr. MacMorran's RFC is also unsupported by
22  substantial evidence:

23        The check-box/fill-in forms are conclusory and offer little explanation
24      for the conclusions reached therein. . . .  Dr. MacMorra[n] appears to have
25      relied primarily upon the claimant's subjective complaints, which are not
26      entirely credible.  He included no formal psychological testing results to
27      support his assessments.  He identified no deficits in intellectual functioning.

28

1    (AR 37.)  These are not legitimate criticisms.  The two State agency psychiatrist opinions were
2    primarily check-box assessments, with minimal commentary that was conclusory.  Dr. Smith,
3    without any explanation at all, states Claimant is capable of performing work in a non-public
4    setting.  (AR  263.)  Dr. Paxton merely affirms Dr. Smith's conclusory assertion.  (AR 298.)
5    Their opinions have no value at all based on the ALJ's own rationale.

6         By comparison, Dr. MacMorran's assessments and treatment notes are extensive,
7    consistent, fully developed, and consider all the symptoms of Plaintiff's mental impairment.  The
8    Mental Disorder Questionnaire Form contains handwritten narrative responses to questions.
9    (AR 269-73.)  The ALJ's call for objective test results, moreover, is legally insufficient to
10   discount Dr. MacMorran's RFC.  Psychiatric impairments are not as amenable to substantiation
11   by objective laboratory testing as are physical impairments.  Hartman v. Bowen, 636 F. Supp.
12   129, 131-32 (N.D. Cal. 1986.)  The diagnostic techniques necessarily will be less tangible.
13   Lebus v. Harris, 526 F. Supp. 56, 60 (N.D. Cal. 1981).  Mental disorders cannot be "ascertained
14   and verified" like physical ailments.  Hartman, 636 F. Supp. at 132.  Thus, in the case of mental
15   illness, clinical and laboratory data may consist of "the diagnoses and observations of
16   professional psychiatrists and psychologists."  Id.  The Commissioner's own regulations
17   recognize the validity of clinical findings in mental status examinations.  20 C.F.R. § 404.1513
18   (b)(2).  Here, Dr. MacMorran provided an Adult Intake Assessment, Medical Disorder
19   Questionnaire Form, Medical Source Statement, and Mental Capacities Evaluation setting forth
20   and explaining his clinical findings, observations, and RFC assessment.  Thus, it cannot be said
21   that Dr. MacMorran simply relied on Plaintiff's subjective complaints.

22        The ALJ is responsible for resolving conflicts in the medical evidence.  Andrews, 53 F.3d
23   at 1039.  The ALJ's reasonable interpretation of the evidence should not be second-guessed.
24   Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  In this case, however, the ALJ's
25   interpretation of the evidence is not reasonable.  The opinions of Dr. Smith and Dr. Paxton are
26   not substantial evidence because Dr. MacMorran's RFC is supported by treatment notes
27   containing clinical findings in mental status reports that are appropriate for mental impairments.
28   The ALJ improperly discounted Dr. MacMorran's RFC assessment.

**B.      The ALJ Improperly Discounted Plaintiff's Credibility**

Plaintiff also contends that the ALJ improperly discounted her credibility.  The Court agrees.

### 1.      Relevant Federal Law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 & n.2.  The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because it is unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the ALJ finds the claimant's symptom testimony not credible, the ALJ "must specifically make findings which support this conclusion."  Bunnell, 947 F.2d at 345.  These findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas, 278 F.3d at 958; see also Rollins, 261 F.3d at 856-57; Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722.  The ALJ must identify what testimony is not credible and what evidence discredits the testimony.  Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

### 2.      Analysis

The ALJ found that Plaintiff's allegations of disability are not credible to the extent alleged.  (AR 36.)  The ALJ made no express finding of malingering, and Dr. MacMorran made an express finding that Plaintiff was not a malingerer.  (AR 331.)  Thus, the ALJ was required to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's credibility.  Smolen, 80F.3d at 1283-84.  The ALJ failed to do so.

The ALJ presented six reasons for discounting Plaintiff's credibility.  First, the ALJ found that there were no objective findings to support Plaintiff's allegations of disabling limitations.

1   (AR 36.)  An ALJ may consider a lack of objective medical evidence to corroborate a claimant's

2   subjective symptoms so long as it is not the only reason for discounting a claimant's credibility.

3   Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Thomas, 278 F.3d at 959.  Here,

4   however, Plaintiff's allegations of disability are supported by Dr. MacMorran's RFC based on

5   the clinical findings contained in his mental status examinations.  The ALJ's lack of objective

6   medical evidence reason for discounting Plaintiff's credibility is not supported by substantial

7   evidence.

8           Second, the ALJ asserts that the State agency reviewing physicians "were of the opinion

9   she retains the capacity for simple repetitive tasks."  (AR 36.)  As already observed, the

10  opinions of these non-examining physicians are not substantial evidence and contradict Dr.

11  MacMorran's RFC that is supported by his clinical findings set forth in his treatment notes.

12  Additionally, the fact that Plaintiff can do simple repetitive tasks does not address how often she

13  would be off task or miss work because of depression, paranoia, and difficulty interacting with

14  co-workers and supervisors.

15          Third, the ALJ once again recites that Plaintiff testified that only the voices in her head

16  prevent her from working, and the treatment records confirm that the voices "improved

17  markedly" with Abilify.  (AR 36.)  As already observed, the ALJ's assertion ignores Plaintiff's

18  paranoia and depression.  Dr. MacMorran's RFC assessment that Plaintiff would miss 4 days of

19  work a month was based on more than Plaintiff hearing voices.  Additionally, marked

20  improvement in the voices was based on Plaintiff's statements, not Dr. MacMorran's findings.

21  Dr. MacMorran's treatment notes report only "some progress."

22          Fourth, the ALJ asserts that Claimant has received only conservative treatment.  (AR

23  36.)  Evidence of conservative treatment, such as over-the-counter medication, can be

24  sufficient to discount a claimant's allegations of disability.  Parra, 481 F.3d at 751.  Here,

25  however, Plaintiff has been taking psychotropic medication and receiving outpatient care since

26  2005.  Claimant does not have to undergo inpatient hospitalization to be disabled.  Indeed, the

27  Ninth Circuit has criticized the use of lack of treatment to reject mental complaints, both

28  because mental illness is notoriously under-reported and because it is a questionable practice

13

1    to chastise one with a mental impairment for the exercise of poor judgment in seeking

2    rehabilitation.  Regennitter v. Commissioner of Soc. Sec. Adm., 166 F.3d 1294, 1299-1300 (9th

3    Cir. 1999).  The ALJ's conservative treatment reason is not clear and convincing.

4         Fifth, the ALJ asserts that Plaintiff's daily activities are consistent with the RFC and

5    inconsistent with Dr. MacMorran's RFC.  (AR 36.)  An ALJ may consider daily activities

6    inconsistent with an alleged disability in evaluating credibility.  See Curry v. Sullivan, 925 F.2d

7    1127, 1130 (9th Cir. 1990).  Specifically, the ALJ says that Plaintiff lives on her own and,

8    according to her friend Julie Rice, "She has no problems with personal care, prepares her own

9    meals, cleans her own room, does her own laundry, walks to town, goes out alone 'all the time',

10   shops, reads, watches television and works with yarn." (AR 36.)  The ALJ's characterization is

11   one-sided, citing only statements of Ms. Rice that favor the ALJ's RFC.  Julie Rice's Third Party

12   Adult Function Report is considerably more mixed than the ALJ represents.  (AR 143-150.)  Ms.

13   Rice stated that, with regard to personal care, she has to tell Plaintiff to brush her hair and when

14   to take her medications.  (AR 145.)  When Plaintiff goes to town for a doctor's appointment, "it

15   takes her all day to come home.  I ask her why it takes her all day to come back home.  She

16   said I don't know." (AR 143.)  Plaintiff sometimes cannot do certain activities mentioned by the

17   ALJ, such as watching TV, reading, and working with yarn, because she is hearing voices.  (AR

18   147.)  Ms. Rice says Plaintiff does not like being with people (AR 147), does not get along with

19   people (AR 148), and cannot pay attention or follow instructions.  (AR 148.)  Some of these

20   problems also are reflected in Dr. MacMorran's recent treatment notes, which indicate that,

21   although the voices had diminished, they were still occurring, as was Plaintiff's neglect of her

22   hygiene, paranoia around others, and need for reminders to keep appointments.  (AR 373.)  On

23   this mixed record, Plaintiff's daily activities do not constitute a clear and convincing reason for

24   discounting her credibility.

25        Sixth, the ALJ states that the record does not indicate that Claimant suffers from

26   debilitating side effects from her medications.  (AR 36.)  The point is undisputed, but she never

27   claimed medication side effects and their absence has nothing to do with her credibility.  The

28   Commissioner does not defend this reason in the Joint Stipulation.

1    The ALJ has found that Plaintiff suffers from the severe impairment of schizoaffective

2    disorder.  She is not a malingerer.  No one suggests that she is feigning hearing voices or does

3    not suffer from paranoia and depression.  Dr. MacMorran's clinical findings set forth in his

4    treatment notes, mental status examinations, and RFC are medical evidence supporting

5    disability.  The ALJ improperly discounted Plaintiff's credibility.

6                                                    * * *

7    The ALJ improperly discounted Dr. MacMorran's RFC.  The ALJ improperly discounted

8    Plaintiff's credibility.  The ALJ's RFC is not supported by substantial evidence.

9                                               **ORDER**

10    IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is

11    REVERSED and REMANDED for further proceedings in accordance with this Memorandum

12    Opinion and Order and with law.

13    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

14

15    DATED: April 4, 2012                          */s/ John E. McDermott*
16                                                  JOHN E. MCDERMOTT
17                                                  UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28